IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHELITA, G., § § Plaintiff, § § v. § § COMMISSIONER, SOCIAL § SECURITY ADMINISTRATION, § § Defendant. § | Case No. 3:23-cv-00203-M-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Chelita G.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. (ECF No. 1). For the reasons explained below, the District Court should AFFIRM the Commissioner's decision.

**Background**

Plaintiff alleges that she is disabled due to a variety of physical impairments, including osteoarthritis, back pain, and lower extremity pain. Tr. 67 (ECF No. 8-1). She filed for disability insurance benefits (DIB) on

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

March 12, 2020, alleging a disability onset date of January 18, 2020. Tr. 16. After her application for DIB was denied initially and on reconsideration, an Administrative Law Judge (ALJ) held an administrative hearing on January 4, 2022.[2] *Id.* At the time of the hearing, Plaintiff was 61 years old. Tr. 40. She is a high school graduate and has past work experience as an appliance salesperson at Lowes, a sanitation agent for United Airlines, and an administrative assistant at a law firm. Tr. 58-59. On June 27, 2022, the ALJ issued a decision finding that Plaintiff had not been under a disability within the meaning of the Social Security Act from January 18, 2020, through the date of the decision. Tr. 26. Thus, the ALJ found Plaintiff was not entitled to DIB. Tr. 26.

In her written decision utilizing the five-step sequential evaluation,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity

---

[2] Due to extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic, all participants attended the hearing by telephone. Tr. 16.

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th

2

since her alleged onset date. Tr. 19. The ALJ also found that Plaintiff suffered from osteoarthritis, degenerative disc disease, and obesity, but she did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. Tr. 19-20. The ALJ then determined that Plaintiff had the Residual Functional Capacity (RFC) to perform less than the full range of light work. Tr. 20. Specifically, the ALJ found:

> [Plaintiff] can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently and can sit up to 6 hours in an 8-hour workday but can stand and/or walk only 2 hours in an 8-hour workday. The [Plaintiff] can no more than frequently balance on flat surfaces, can no more than occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps, and can never climb ladders, ropes, or scaffolds.

Tr. 20. Finally, relying on the testimony of a vocational expert, the ALJ determined that Plaintiff was capable of performing her past relevant work as an administrative assistant and secretary. Tr. 24.

Plaintiff appealed the ALJ's decision to the Appeals Council, but the Appeals Counsel denied review. *See* Tr. 6. Plaintiff then filed this action in federal district court. *See* Compl. (ECF No. 1). Plaintiff challenges the ALJ's

---

Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

decision on only one ground; she argues that the ALJ did not properly consider medical opinion evidence.

## Legal Standards

Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and whether the proper legal standards were utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does "not reweigh the evidence, try the issues *de novo*, or substitute" its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. An "ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ." *Corpany v. Colvin*, 2014 WL 1255316, at *9 (N.D. Tex. Mar. 26, 2014) (citing *Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009)).

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder*

4

*v. Colvin*, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curiam)); *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in her articulation compromises no aspect of fairness or accuracy that her process is designed to ensure."). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)).

## Analysis

In this action, Plaintiff asserts that an examination report completed by a state agency consulting doctor, Dr. Silverman, was a medical opinion under the revised regulations. Pl.'s Br. 1 (ECF No. 10); *see also* Tr. 446 (Dr. Silverman's report). Thus, Plaintiff contends, the ALJ erred by failing to articulate the persuasiveness of the report in her decision. *Id.* The

5

Commissioner responds that Dr. Silverman's report was not a medical opinion that required a persuasiveness articulation. Commissioner's Br. 1 (ECF No. 12).

I. Dr. Silverman's consultative examination report does not constitute a medical opinion under the revised regulations.

Since Plaintiff applied for DIB on March 12, 2020, the revised regulations adopted in March of 2017 apply. *See* 20 C.F.R. § 404.1520c ("For claims filed . . . on or after March 27, 2017, the rules in this section apply."). According to the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "Instead, ALJs must 'articulate in [their] determination or decision how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record.'" *Diamond N. J. v. Kijakazi*, 2022 WL 4589099, at *3 (N.D. Tex. Sept. 29, 2022) (Horan, J.) (citing 20 C.F.R. § 404.1520c(b)).

The revised regulations mandate that ALJs evaluate the persuasiveness of medical opinions by applying five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 404.1520c(c). The factors of supportability and consistency are the most

6

important factors ALJs consider; thus, when evaluating a medical opinion, the ALJ is required to explain how he or she considered the supportability and consistency factors, "but an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly." *Diamond*, 2022 WL 4589099, at *3 (citing 20 C.F.R. § 404.1520c(b)(2)).

In this case, it is undisputed that the ALJ did not articulate the persuasiveness of Dr. Silverman's report in the manner required for medical opinions. Instead, the ALJ simply summarized Dr. Silverman's findings:

> At the November 2020 consultative examination, the claimant appeared with a markedly antalgic gait, decreased deep tendon reflexes, mild weakness in the bilateral lower extremities, crepitus and decreased range of motion of the knees, tenderness and decreased range of motion of the hips, lumbar spine tenderness, and positive straight leg raising.

Tr. 22. But "[n]ot all statements by medical providers are considered medical opinions." *Diamond*, 2022 WL 4589099, at *3 (citing *William T. v. Comm'r of Soc. Sec.*, 2020 WL 6946517, at *3 (N.D. Tex. Nov. 25, 2020)). Instead, the regulations specifically define medical opinion as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in the ability to perform the physical or mental demands of work activities, perform other demands of work, and adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). By

7

contrast, "judgments about the nature and severity of" the claimant's impairments, her medical history, "clinical findings, diagnosis, treatment prescribed with response, or prognosis" constitute "other medical evidence." 20 C.F.R. § 404.1513(a)(3).

Here, Dr. Silverman's consultative examination report does not meet the definition of medical opinion. Dr. Silverman completed the examination at the request of a state agency responsible for developing medical evidence and making the initial determination on whether a claimant is disabled. *See* Tr. 449 (Dr. Silverman's report addressed to an examiner at Disability Determination Services). He opens the report by explaining the history of Plaintiff's alleged impairments. In this section, he simply recites Plaintiff's own subjective explanation of her symptoms. *See, e.g.*, Tr. 449 ("The patient states that she has had problems with arthritis in her lower extremities for many years."). He goes on to describe what medications Plaintiff is currently taking, her past medical history, and her family history. Then, the bulk of Dr. Silverman's report lists out the results of his physical examination of Plaintiff. For example, he writes:

> There is moderate tenderness in the lumbar spine and lumbar paraspinal musculature; straight leg raise (SLR) test was positive with low back pain at 30 degrees bilaterally; knees had crepitus bilaterally with decreased range of motion; left hip had moderate tenderness with limited range of motion; she had mild 4/5 weakness in the bilateral lower extremities, possibly limited by pain in her knees and hips; she walked with a "markedly antalgic gait" and had moderate difficulty getting on

> and off the exam table; she had moderate difficulty heel, toe, and tandem walking; and she was unable to bend over and touch toes or do a deep knee bend.

Tr. 451. Finally, Dr. Silverman provides a "discussion" section at the end of his report. *See* Tr. 452. Among other things, he writes that Plaintiff "has chronic bilateral knee pain and left hip pain . . . presumably due to osteoarthritis" and that "she also has chronic back pain, which is also limiting[.]" *Id*. Ultimately, he concludes that "[p]rognosis is guarded in the absence of definitive diagnostic reevaluation and specific targeted therapy." Tr. 452.

Accordingly, Dr. Silverman did not offer a medical opinion in any part of his report. Instead, Dr. Silverman's description of Plaintiff's physical examination is properly characterized as "objective medical evidence," which includes "medical signs, laboratory findings, or both[.]" 20 C.F.R. § 404.1513(a)(1). Medical signs "means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's own description of her physical impairment]" and that "must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1502(g). And Dr. Silverman's statements that Plaintiff suffers from chronic knee and back pain and that such pain is "limiting" constitute "other medical evidence" as it represents a judgment about the nature and severity of Plaintiff's impairments.

9

Critically, Dr. Silverman never provides his own evaluation specifically explaining what Plaintiff can still do despite her limitations. Instead, his report contains Plaintiff's own description of her symptoms, her medical history, and physical examination results. Dr. Silverman's bald statement that Plaintiff's chronic pain is "limiting," without more, cannot fairly be said to meet the regulatory definition of medical opinion—the definition calls for a statement about specific limitations in one or more explicitly articulated workplace-related abilities.

Indeed, courts in this district require more than the bare, unspecified mention of a "limitation" for a report such as Dr. Silverman's to constitute a medical opinion. For example, in a medical opinion at issue in *Crystal G. v. Kijakazi*, a state agency consulting doctor completed a report similar to Dr. Silverman's. *Crystal G. v. Kijakazi*, 2022 WL 4001148 (N.D. Tex. Aug. 16, 2022), report and recommendation adopted, 2022 WL 4002902 (N.D. Tex. Aug. 31, 2022). But in contrast to Dr. Silverman's vague indication that Plaintiff's pain was limiting, the doctor opined—in the concluding "impression" section of the report—that the claimant "had limitations with standing and walking, lifting and carrying weight, and bending, stooping, crouching, squatting, reaching, grasping, handling, fingering, and feeling due to lower back pain." *Id.* at *11. Another case held that doctors provided medical opinions under the revised regulations by making statements such

as "due to slow transit constipation and occasional encopresis, [p]laintiff would need to be able to use a private restroom whenever she requested and would need to be able to drink water when needed" and "Plaintiff may have special transportation needs, difficulty maintaining alertness, difficulty with mobility and seating, difficulty with self-help skills, [and] need additional rest periods[.]" *Diamond*, 2022 WL 4589099, at *4.

Thus, as these examples reflect, Dr. Silverman's report is not a medical opinion. The ALJ was not required to evaluate the persuasiveness of the report under the five-factor analysis provided in the revised regulations. Therefore, the ALJ did not commit error, and Plaintiff is not entitled to remand on this ground.

II. <u>Even if the ALJ committed error in evaluating Dr. Silverman's report, such error was harmless.</u>

In the Fifth Circuit, harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. Nov. 28, 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Thus, in order to establish prejudice warranting remand, Plaintiff would have to show that the ALJ's decision "might have been different had [s]he . . . properly considered [Dr. Silverman's] opinions." *Crystal G.*, 2022 WL 4001148, at *12 (citing *Bornette*, 466 F. Supp. 2d at 816).

11

Plaintiff does not provide any argument or point to any evidence showing that the ALJ might have decided differently if she had evaluated Dr. Silverman's report as a medical opinion. Indeed, the consultative report is entirely consistent with the ALJ's determination denying Plaintiff DIB. In Dr. Silverman's concluding section of his report, for example, he states that Plaintiff has osteoarthritis and suffers from chronic back pain which is "limiting." Tr. 452. These statements are harmonious with the ALJ's finding that Plaintiff suffered from osteoarthritis and degenerative disc disease and that she retained the RFC to perform "less than the full range of light work." Tr. 20. Further, Plaintiff does not show—or even argue—that Dr. Silverman's report adds any further restrictions in addition to those already included in the ALJ's RFC determination.

Accordingly, the Court should conclude that remand is not warranted on this ground.

## Recommendation

Because the ALJ applied the correct legal standards, and substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act, the Court should AFFIRM the hearing decision in all respects.

**SO RECOMMENDED.**

February 9, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).